UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARQUISE KINNEL,
    *Plaintiff,*

   v.                        No. 3:23-cv-00011 (VAB)

BROWN *et al.*,
    *Defendant.*

**INITIAL REVIEW ORDER**

Marquis Kinnel ("Plaintiff"), currently confined at Corrigan-Radgowski Correctional

Center in Uncasville, Connecticut, has filed a Complaint *pro se* under 42 U.S.C. §§ 1983,

1985(3), 1986, and 1988. Mr. Kinnel names nine defendants, Officer Brown, Lieutenant Gooley,

Officer Blake, Lieutenant Pearson, Disciplinary Hearing Officer Czeremcha, Investigator

Hotchkiss, Advisor Campbell, District Administrator Nick Rodriguez, and Warden Martin, in

their individual capacities only. Mr. Kinnel asserts claims for violation of his Eighth and

Fourteenth Amendment rights, and seeks damages as well as declaratory and injunctive relief.

For the reasons discussed below, the Complaint is **DISMISSED** without prejudice under

28 U.S.C. § 1915A(b)(1).

To the extent the deficiencies in this Complaint can be remedied, Mr. Kinnel must file a

proposed Amended Complaint by **March 3, 2023**.

Failure to file a proposed Amended Complaint by **March 3, 2023** will result in the

dismissal of this case with prejudice.

I.      **FACTUAL BACKGROUND**

On September 27, 2022, Officer Brown allegedly concluded an investigation into a

charge that Mr. Kinnel had attempted to convey contraband into the correctional facility through

the inmate mail system. ECF No. 1 ¶ 18. Officer Brown allegedly concluded that a review of Mr.

Kinnel's phone calls provided additional evidence of his attempts to convey contraband into the

facility. *Id*. Officer Brown also allegedly stated that an envelope addressed to Mr. Kinnel

contained five orange strips imprinted with "N8" and that the strips tested positive for suboxone.

*Id*.

The following morning, Lieutenant Gooley, with a few other officers, allegedly moved

Mr. Kinnel to the restrictive housing unit ("RHU"). *Id.* ¶ 19. Shortly thereafter, Officer Blake

allegedly delivered a disciplinary report to Mr. Kinnel's cell.  *Id.* ¶ 20.

From September 28, 2022 through October 11, 2022, Lieutenant Pearson, the RHU unit

manager, allegedly would stop at Mr. Kinnel's cell while touring the unit and speak to him about

the disciplinary report. *Id.* ¶ 21. Lieutenant Pearson allegedly advised Mr. Kinnel to plead guilty

to the charge and told him, if he did so, he would be released from RHU that day. *Id.* Mr. Kinnel

allegedly refused to plead guilty and remained in RHU for fifteen days. *Id.*

Investigator Hotchkiss allegedly never spoke to Mr. Kinnel during his investigation of the

matter. *Id.* ¶ 22.On October 11, 2022, while acting as Mr. Kinnel's advisor, Defendant Campbell

allegedly handcuffed Mr. Kinnel and brought him to defendant Campbell's officer to provide a

statement. *Id.* ¶ 23. Mr. Kinnel allegedly read and signed the typed statement.  *Id.*  While in

Defendant Campbell's officer, Mr. Kinnel allegedly spoke with Investigator Hotchkiss and

Office Nemeck. *Id.* ¶ 24. Mr. Kinnel allegedly asked about the evidence against him. *Id.*  The

officers allegedly told Mr. Kinnel that an envelope addressed to him had suboxone behind the

postage stamps, identified the letter as coming from Mr. Kinnel's brother, and read Mr., Kinnel

the phone call transcript. *Id.* Mr. Kinnel alleges that the phone call contained no reference to drugs, but instead concerned family photographs and Mr. Kinnel's attempts to persuade his brother to send him some "risqué girl photos" with family photographs. *Id.* ¶ 29.

On October 18, 2022, Mr. Kinnel allegedly was called to the counselor's officer for his disciplinary hearing. *Id.* ¶ 26. Defendants Campbell, Hotchkiss, and Czeremcha allegedly were present. *Id.* Although Hearing Officer Czeremcha allegedly asked Mr. Kinnel a few questions, Mr. Kinnel believes that Officer Czeremcha had decided the issue before Mr. Kinnel entered the room. *Id.*

Mr. Kinnel allegedly was found guilty and sentenced to fourteen days in RHU which he already had served, 90 days loss of mail, and 60 days loss of commissary. *Id.* ¶ 26. Mr. Kinnel allegedly appealed the decision. *Id.* On November 8, 2022, District Administrator Rodriguez allegedly denied Mr. Kinnel's appeal. *Id.* ¶ 27.

Mr. Kinnel alleges that he has not been in trouble in years and has never had any dealings with drugs. *Id.* ¶¶ 30-31. Mr. Kinnel alleges that this action occurred soon after he was permitted to proceed in a lawsuit against other correctional employees. *Id.* ¶ 30. Mr. Kinnel contends that his brother's letter was tampered with. *Id.* ¶ 32. As a result of this incident, Mr. Kinnel's brother allegedly no longer accepts Mr. Kinnel's phone calls and Mr. Kinnel is called a drug dealer. *Id.*

## II.    STANDARD OF REVIEW

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they]

suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  This requirement applies both when the plaintiff pays the filing fee and when he proceeds in forma pauperis.  *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A document filed pro se is to be liberally construed and a pro se complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (internal citations and quotations omitted).  However, notwithstanding this liberal interpretation, a pro se complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## III.    DISCUSSION

Mr. Kinnel describes his claims as "[t]he unsafe conditions, pain and suffering, discrimination, retaliation, emotional distress, and mental/psychological damages violated Plaintiff Marquis Kinnel rights and constituted cruel and unusual punishment, a due process violation." *Id.* at 10 ¶ 2. He also contends that the defendants conspired to violate his rights and deny him due process. *Id.* ¶ 3.Finally, Mr. Kinnel asserts a state law claim for assault and battery. *Id.* ¶ 7.

The Court will address each of these claims in turn.

### A.  The Fourteenth Amendment Due Process Claim

To state a claim for violation of his right to procedural due process, Mr. Kinnel must allege facts showing that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law. *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013)(internal citations omitted)("To prove a violation of due process, a plaintiff must establish that (1) he possessed a liberty interest and (2) defendants deprived him of that interest without sufficient process.").

The Due Process Clause, standing alone, generally does not create a protected liberty interest in conditions of confinement as long as the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (finding no protected liberty interest in freedom from interstate prison transfer, even to a maximum-security facility, because prison officials have discretion to transfer prisoners among correctional facilities "for whatever reason or for no reason at all"). There are circumstances, however, under which a state statute, policy, or regulation can create a protected liberty interest relating to conditions of confinement.

In *Sandin v . Conner*, 515 U.S. 472 (1995), the Supreme Court held that a liberty interest warranting due process protection "will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection under the Due Process Clause of its own force . . . nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

Although Mr. Kinnel does not provide any specific facts in the section of the Complaint containing his alleged denial of his Fourteenth Amendment right to due process, because he disagrees with the disciplinary finding, the Court assumes that Mr. Kinnel alleges a denial of

procedural due process at the disciplinary hearing. Thus, to assess Mr. Kinnel's claim, the Court must determine whether the sanctions imposed at the disciplinary hearing constitute an atypical and significant hardship.

At the disciplinary hearing, Mr. Kinnel received sanctions of fourteen days confinement in RHU, ninety days loss of mail, and sixty days loss of commissary. In *Sandin*, the Supreme Court held that confinement in the restrictive housing unit for thirty days for disciplinary reasons did not implicate a constitutionally protected liberty interest.  515 U.S. at 485-86.  Further, the Second Circuit has held that confinement in restrictive housing for less than 101 days does not constitute an atypical and significant hardship sufficient to state a claim under *Sandin*.  *See Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (finding that 101-day confinement in restrictive housing, while "doubtless unpleasant," did not constitute atypical and significant hardship); *Lewis v. Sieminski*, No. 3:08-CV-728(JCH), 2010 WL3287991, at *6 (D. Conn. Sept. 22, 2010) (noting that "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 20 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin*").

As the Second Circuit has held that a brief confinement in restrictive housing, such as fourteen days, does not constitute an atypical and significant hardship, this sanction is insufficient to support a claim for denial of due process. The additional sanctions of ninety days loss of mail and sixty days loss of commissary privileges, imposed after Mr. Kinnel's release from RHU, do not alter this determination. *See Baldwin v. Arnone*, No. 3:12-cv-243(JCH), 2013 WL 628660, at *3, 8 (D. Conn. Feb. 19, 2013) (holding that sanctions of fifteen days confinement in punitive segregation followed by thirty days loss of recreation and ninety days loss of telephone privileges insufficient to demonstrate atypical and significant hardship to

support due process claim under *Sandin*) (citing cases).

As Mr. Kinnel's disciplinary sanctions do not constitute an atypical and significant hardship, he fails to state a plausible due process claim based on the guilty finding at the disciplinary hearing.

Accordingly, Mr. Kinnel's Fourteenth Amendment due process claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

**B. The Eighth Amendment Claim**

To state a cognizable Eighth Amendment claim for unconstitutional conditions of confinement,  a plaintiff must allege facts establishing an objective element, that "the deprivation was sufficiently serious that he was denied the minimal civilized levels of life's necessities," and a subjective element, that the defendants "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety."  *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted)). A plaintiff also must allege facts showing that the defendants knew "of and disregard[ed] an excessive risk to inmate health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and ... dr[ew] that inference."  *Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002).

Objectively, the seriousness of a violation is determined based on contemporary standards of decency.  *See Walker*, 717 F.3d at 125.  The inquiry focuses on the "severity and duration" of the conditions, not any "resulting injury."  *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)).

Mr. Kinnel generally references "unsafe conditions" in his statement of legal claims. ECF No. 1 at 10, ¶ 2. He does not describe any conditions of confinement, and instead merely alleges that he was held in RHU for fifteen days. As Mr. Kinnel does not allege facts showing that the conditions in RHU violated contemporary standards of decency, he fails to state a plausible Eighth Amendment claim. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (court may not "invent factual allegations" that the plaintiff has not pleaded).

Accordingly, the Eighth Amendment claim is dismissed under 28 U.S.C. § 1915A(b)(1).

**C.  The Retaliation Claim**

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally prohibited retaliatory act.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).

To state a plausible First Amendment retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks omitted)).  The adverse action must have been sufficiently serious that it would deter a similarly situated person of ordinary firmness from exercising his right to speech.  *See id.*  at 93-94.  "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection."  *Dawes v. Walker*, 239 F.3d 489, 493 (2d. Cir. 2001).  Courts consider the circumstances of the

particular case when evaluating this second element.  *Id.* (finding that the definition of adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise.  Prisoners may be required to tolerate more than public employees ... before a retaliatory action taken against them is considered adverse."  *Id.* (internal quotation marks and citation omitted)).  A prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts.  *Dolan*, 794 F.3d at 295 (quoting *Davis*, 320 F.3d at 352).

Mr. Kinnel includes only one statement suggesting a retaliation claim:  ECF No. 1 ¶ 31.

Mr. Kinnel alleges that he was investigated and received the disciplinary charge soon after he received word that a lawsuit he filed against other correctional employees was going forward. *See* Complaint at – ("Plaintiff hasn't been in any trouble in years and believes that it isn't a coincidence that as soon as he's granted the go-ahead by the court to proceed in a lawsuit against three D.O.C. employees, he's targeted by other D.O.C. employees."). Filing lawsuits is a protected activity.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (filing a lawsuit or grievance is constitutionally protected activity and will support a retaliation claim). Thus, Mr. Kinnel has alleged facts to satisfy the first element.

Mr. Kinnel also alleges that he was investigated for conspiring to bring contraband into the facility and received a disciplinary report for doing so. Although he generally refers to "defendants," the only Defendants alleged to have taken any action that might be considered adverse are Officer Brown, who conducted the investigation, Hearing Officer Czeremcha, who found Mr. Kinnel guilty of the charge, and District Administrator Rodriguez, who denied his appeal. The other Defendants did not participate in the incident to an extent sufficient to constitute adverse action.  For example, Lieutenant Gooley merely escorted Mr. Kinnel to RHU;

Officer Blake delivered the disciplinary report; Lieutenant Pearson was the unit manager in RHU, who is alleged to have spoken with Mr. Kinnel while touring the unit; and Warden Martin was merely copied on the denial of Mr. Kinnel's appeal. None of these actions would deter a similarly situated inmate of ordinary firmness from filing a lawsuit.

A causal connection between the protected activity and the adverse action may be established "by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). The claim must be asserted with specificity, however, "'a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone.'" *Smith v. Annucci*, No. 9:18-CV-1107(DNH/DJS), 2019 WL 11727264, at *3 (N.D.N.Y. Jan. 16, 2019) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). "When a plaintiff files a grievance or lawsuit against one officer and subsequently alleges retaliatory adverse action by another officer, the plaintiff has an elevated burden for demonstrating retaliation because it is difficult to establish one defendant's retaliation for complaints against another defendant." *Walker v. Senecal*, No. 9:20-CV-0082(DNH/CFH), 2021 WL 3813081, at *6 (N.D.N.Y. July 19, 2021) (citation and internal quotation marks omitted), *report and recommendation adopted*, 2021 WL 3793771 (N.D.N.Y. Aug. 26, 2021).

The Court may take judicial notice of other lawsuits filed by Mr. Kinnel. The existence of these cases "can be accurately and readily determined" from publicly accessible court dockets "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (holding that courts may take judicial notice of other lawsuits "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings"). Mr. Kinnel filed a lawsuit in this district in March 2022. On September 2, 2022, the Court ordered the Complaint served on three medical

staff members who worked at Osborn Correctional Institution.  *See Kinnel v. Quieros*, No. 3:22-cv-399(VAB).

While the investigation occurred later that month, the investigation was at Corrigan-Radgowski Correctional Center and the defendants are all custodial staff, not medical providers. Mr. Kinnel has alleged no facts suggesting any connection between the claims or Defendants in this case and his previously filed case, or even that any defendant was aware of the other case. His claim is based only on his assumption. This is insufficient to support a retaliation claim.  *See Coleman v. Cuomo*, No. 9:18-CV-0390 (MAD/CFH), 2019 WL 6829613, at *12 (N.D.N.Y. Dec. 13, 2019) (dismissing retaliation claim absent "any facts plausibly suggesting that [the defendant] was aware of plaintiff's prior lawsuit or retaliated against him because of it"), *report and recommendation adopted sub nom. Coleman v. Racette*, 2020 WL 896785 (N.D.N.Y. Feb. 24, 2020).

Accordingly, Mr. Kinnel's retaliation claim is dismissed under 28 U.S.C. § 1915A(b)(1).

**D.  The Conspiracy Claim, 42 U.S.C. § 1985(3)**

Section 1985 prohibits conspiracies.  *See Harnage v. Dzurenda*, No. 3:14-cv-885(SRU), 2014 WL360342, at *2 (D. Conn. July 9, 2014).  Section 1985(1) prohibits conspiracies to prevent federal officers from performing their duties.  *Id.*  Section 1985(2) prohibits conspiracies to deter witnesses from participating in state or federal judicial proceedings. *Id.* Neither section, however, is applicable to this case.

Section 1985(3) is broadly worded to apply "to any conspiracy to deprive 'any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'"  *Sarner v. Caldwell-Boyd*, No. 3:21-CV-987(JAM), 2022 WL 4132940, at *5 (D. Conn. Sept. 12, 2022). However, "the Supreme Court has construed and limited the statute to

require a plaintiff to prove a conspiracy that has the following characteristics: '(1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official encroachment.'" *Id.* (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993)). The district court noted that "the Supreme Court has recognized only two federal constitutional rights for the purposes of a § 1983(3) claim that are protected against private as well as government encroachment: "the Thirteenth Amendment right to be free from involuntary servitude ... and, in the same Thirteenth Amendment context, the right of interstate travel.'" *Id.* at *6 (quoting *Bray*, 506 U.S. at 278).

Mr. Kinnel does not allege that the purported conspiracy was motivated by any racial or class-based discriminatory animus and does not allege the violation of one of the two recognized constitutional rights. Thus, he fails to state a plausible section 1985(3) conspiracy claim. *See Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (noting that section 1985(3) was not intended to provide a federal remedy for "all tortious, conspiratorial interferences with the rights of others") (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971)).

In addition, Mr. Kinnel's conspiracy claim is conclusory. He fails to allege any facts showing that the defendants "entered into an agreement to achieve unlawful ends and were motivated by some class-based animus." *Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021). Vague and conclusory allegations do not state a cognizable conspiracy claim. *Id.* at 69; *see also LeGrand v. Walmart Stores E., LP*, 779 F. App'x 779, 783 (2d Cir. 2019) (conspiracy claim properly dismissed where pleadings included no factual allegations of an agreement or meeting of the minds).

Accordingly, Mr. Kinnel's section 1985(3) conspiracy claim is dismissed under 28

U.S.C. § 1915A(b)(1).

Further, Mr. Kinnel cannot state a conspiracy claim under section 1983. "[B]ecause employees acting within the scope of their employment are agents of their employer, an employer and its employees are generally considered to be a single actor, rather than multiple conspirators." *Federal Ins. Co. v. United States*, 882 F.3d 348, 368 (2d Cir. 2018). "Although the Second Circuit has not yet considered whether the intracorporate conspiracy doctrine applies to section 1983 cases, district courts within the Second Circuit have applied the doctrine in section 1983 cases and, in particular, to section 1983 cases filed by prisoners." *Burrell v. Quiros*, No. 3:21-CV-393(KAD), 2021 WL 1239916, at *6 n.3 (D. Conn. Apr. 2, 2021).

The intracorporate conspiracy doctrine applies unless individual employees are "pursuing personal interests wholly separate and apart from the entity." *Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015) (internal quotation marks omitted). To meet the exception, Mr. Kinnel must do more than simply allege that the Defendants were motivated by personal bias against him. *See Vega v. Artus,* 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (holding that "in order to allege facts plausibly suggesting that individuals were pursuing personal interests wholly separate and apart from the entity" to over come the intracorporate conspiracy doctrine "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against the plaintiff" (internal quotation marks omitted)).

As all Defendants are correctional employees, and Mr. Kinnel fails to allege any personal bias, he also fails to state a cognizable conspiracy claim under section 1983.

Accordingly, for these additional reasons, the conspiracy claim will be dismissed.

### E.  The 42 U.S.C. § 1986 Claim

Section 1986 provides no substantive rights; it merely provides a remedy for the violation

of section 1985.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 222 n.28 (1970) (Brennan, J., concurring in part and dissenting in part). Thus, a prerequisite for an actionable section 1986 claim is a cognizable section 1985 claim.  *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).

As Mr. Kinnel has not stated a cognizable section 1985 claim, he cannot state a plausible section 1986 claim.

Accordingly, his Section 1986 claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

### F.  The 42 U.S.C. § 1988 Claim

Section 1988(a) provides that the district courts shall exercise their jurisdiction over civil rights cases in conformity with federal law where appropriate or state law. This section does not provide an independent cause of action.  *See Moor v. Alameda Cnty.*, 411 U.S. 693, 702-06 (1973). Indeed, Section 1988(b) provides for award of attorney's fees. As a *pro se* litigant, Mr. Kinnel is not entitled to attorney's fees under section 1988(b). *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991)("[A] pro se litigant who is not a lawyer is not entitled to attorney's fees.").

Accordingly, any claims asserted under section 1988 will be dismissed under 28 U.S.C. § 1915A(b)(1).

### G.  The Assault and Battery Claims

"In Connecticut, there are two elements of the tort of civil assault: (1) the defendant must have 'intend[ed] to cause a harmful or offensive contact ... or an imminent apprehension of such contact,' with another person, and (2) the other person was actually 'put in imminent apprehension' as a result of the contact." *Deegan v. Doe #1*, No. 3:19cv1356(MPS), 2019 WL 5964816, at *5 (D. Conn. Nov. 13, 2019) (quoting *Simms v. Chaisson*, 227 Conn. 319, 331, 890 A.2d 548, 555-56 (2006) (internal quotation marks and citation omitted). The tort of battery also

14

has two elements under Connecticut law: "(1) the defendant must have 'intend[ed] to cause a harmful or offensive contact ... or an imminent apprehension of such contact,' with another person, and (2) 'a harmful contact with the' other person results either 'directly or indirectly.'" *Id*. (quoting *Simms*, 277 Conn. at 331, 890 A.2d at 555 (internal quotation marks and citation omitted).

Mr. Kinnel contends that the Defendants "committed the tort of assault and battery[ i]n that they intentionally and or recklessly caused the plaintiff severe mental injuries by their extreme and outrageous conduct as described above."  ECF No. 1 at 11, ¶ 7.

But Mr. Kinnel alleges no facts suggesting the intention of any Defendant to cause a harmful contact or any apprehension of such contact on his part. Thus, he fails to allege a plausible claim for assault or battery.

Accordingly, this claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

## IV.    CONCLUSION

For the reasons discussed above, the Complaint is **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1).

To the extent the deficiencies in this Complaint can be remedied, Mr. Kinnel must file a proposed Amended Complaint by **March 3, 2023**.

Failure to file a proposed Amended Complaint by **March 3, 2023** will result in the dismissal of this case with prejudice.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of  January, 2023.

/s/ Victor A. Bolden_____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE